**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BROTHERHOOD OF RAILROAD SIGNALMEN<br>917 Shenandoah Shores Road<br>Front Royal, Virginia 22630<br><br>*Plaintiff,*<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION,<br>60 Massachusetts Avenue, N.E.<br>Washington, D.C. 20002<br><br>*Defendant.* | Case No.: |

## COMPLAINT

The Brotherhood of Railroad Signalmen ("BRS" or "Union") brings this Complaint against the National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak" or "Carrier"), for a declaratory order that Amtrak has violated Section 2, Seventh of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 152, Seventh, by unilaterally changing and abrogating the parties' collective bargaining agreement. Amtrak has done so by failing and refusing to acknowledge that work of installing, repairing and maintaining communication systems at an Amtrak owned and controlled facility is covered by the agreement, and by failing and refusing to assign that work to BRS represented forces.

### Parties

1. The BRS is an unincorporated labor organization that maintains its headquarters in Front Royal, Virginia. The BRS is the duly designated representative for collective bargaining under Section 1, Sixth of the RLA, 45 U.S.C. §151, Sixth, of railroad employees working in the Signalman class or craft, including Signalmen employed by Amtrak.

1

2. Amtrak is a rail carrier as that term is defined in Section 1, First of the RLA, 45 U.S.C. §151, First. Amtrak conducts rail operations throughout the contiguous United States and portions of Canada. Amtrak is a partially government-funded corporation that maintains its headquarters in Washington, D.C.

## Jurisdiction and Venue

3. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce. The Court has jurisdiction over the BRS's request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because Amtrak owns and operates lines of railroad and facilities within this District, is headquartered in this District, and the work in dispute in this complaint will occur in this District.

## Statement of Claim

5. Among other things, Amtrak employees working in the Signalman class or craft represented by the BRS are responsible for installing, repairing and maintaining railroad signal systems, railroad signal equipment, and communications systems equipment on rail lines and in facilities owned, controlled, leased and/or managed by Amtrak.

6. The BRS and Amtrak are parties to a collective bargaining agreement that establishes the rates of pay, rules, and working conditions of Amtrak employees working in the Signalman class or craft ("CBA" or "Agreement"). The CBA describes the "Scope" of the work that is BRS work under the Agreement and divides Amtrak-owned lines and facilities covered by the Agreement into various seniority districts.

7. Rule 1 of the Agreement, concerning the "Scope" of the CBA, provides that the

Agreement covers the following:

    A. The following Scope Rule will apply on the Southern Seniority Districts 1, 2 and 3 as well as on the MBTA Commuter Passenger Railroad:

These Rules, subject to the exceptions hereinafter set forth, shall constitute Agreements between Amtrak and its Communication and Signal Department employees of the classifications herein set [forth] engaged in the installation and maintenance of all signals, interlockings, telegraph and telephone lines and equipment including telegraph and telephone office equipment, wayside or office equipment of communicating systems (not including such equipment), highway crossing protection (excluding highway crossing gates not operated in conjunction with track or signal circuits) including repair and adjustment of telegraph, telephone and signal relays and the wiring of telegraph, telephone and signal instrument cases, and the maintenance of car retarder systems, and all other work in connection with installation and maintenance thereof that has been generally recognized as telegraph, telephone or signal work - represented by the Brotherhood of Railroad Signalmen and shall govern the hours of service, working conditions and rates of pay of the respective positions and employees of Amtrak, specified in Rule 2 hereof, namely, Electronic Specialists, Electronic Technicians, Inspectors, Assistant Inspectors, Foremen, Assistant Foremen, C&S Maintainers, Maintainers, Signalmen, Assistant Signalmen, Trainees and Helpers.

The employees in the Communication and Signal Department shall continue to install, maintain and repair, and do testing incident thereto, of all devices and apparatus, including air compressors, motor generator sets, and other power supply, (when such compressors, sets or power supply are used wholly or primarily for signal or telegraph and telephone devices, apparatus or lines, and are individually housed in signal or telegraph and telephone facilities) which are part of the signal or telegraph and telephone systems, to the extent that such work is now being performed by employees of the Communication and Signal Department.  This paragraph shall not, however, prejudice any rights which such employees may have under the Scope Rule, exclusive of this modification, to claim work performed by other crafts in violation of the Scope Rule.

EXCEPTIONS

(a)    This Agreement shall not be construed as granting to employees coming within its Scope the exclusive right to perform the work of installing or maintaining other than Railroad owned facilities or equipment located on the property of the Railroad.

    8. Rule 7 of the Agreement identifies and describes several Seniority Districts for Amtrak Signalmen. One of those Districts is the Southern District which includes District No. 3, known as the "Chesapeake Division", which covers Amtrak rail lines and facilities between

Darby Pennsylvania (milepost 6.3) and the southern limits of the Washington Terminal in Washington, D.C. (which includes the right of way and facilities in Washington Terminal up to the north wall of the Union Station building in Washington, D.C.)

9. Consistent with Rules 1 and 7 of the Agreement, the work of installing, repairing and maintaining Amtrak's communications systems using various technologies (including telegraph, telephone, fiber -optic cable and ethernet data transmission) for Amtrak on its property and in its facilities in the Southern Seniority District has been recognized by BRS and Amtrak as Signalmen Scope work. Such work in the Southern Seniority District has historically been performed by employees working in the Signalman class or craft represented by the BRS, except in instances where the work has been contracted-out after Amtrak's service of a "Labor Clearance Request" stating Amtrak's intent to contract-out work for stated reasons, and negotiation of an agreement with BRS over the plan to contract-out the work.

10. On January 31, 2017, BRS General Chairman David Ingersoll wrote to Amtrak Labor Relations Director Sharon Jindal stating that he had heard that Amtrak had acquired the Railway Express Agency Building in Washington, D.C. which is "north of the wall" of the Union Station building where Amtrak had been renting space for some of its headquarters offices, and asserting that the communications work for the building "accrues to BRS by Agreement". General Chairman Ingersoll requested that Ms. Jindal "confirm and advise".

11. The Railway Express Building was built as part of the original Washington Terminal/Union Station complex.

12. On January 31, 2017 Amtrak Labor Relations Director Jindal responded to General Chairman Ingersoll that she had received his inquiry and would "look into this and get back to you".

13. As of February 14, 2017, Amtrak Labor Relations Director Jindal had not responded to General Chairman Ingersoll's January 31 communication, so he again wrote asking that she advise him of her "findings regarding the REA Building in Washington, D.C."

14. On March 21, 2017, Amtrak sent General Chairman Ingersoll a letter that Amtrak described as a "courtesy notification" of Amtrak's intent to use a contractor "to renovate and rehab the entire 2nd Floor office Space area (20,000 sq. ft.) and renovate suite areas on the first floor, mezzanine, lower level and basement of the Railway Express Agency (REA) Building located within the Union Station Terminal in Washington, D.C.". The March 21 letter stated that the work to be done by the contractor would be design, engineering, demolition and construction work, as well as security and fire alarm systems, IT cabling, and data transmission work.

15. Work involving installation, repair and maintenance of security and fire alarm systems, IT cabling, and data transmission systems on Amtrak owned lines, equipment and facilities is communications work covered by the Scope Rule of the CBA which has historically been performed by BRS represented communications workers employed by Amtrak.

16. Amtrak's March 21, 2017 courtesy notification did not respond to General Chairman Ingersoll's request that Amtrak acknowledge that communications work in the Railway Express Building "accrues to BRS by Agreement", or otherwise recognize that the work that Amtrak wanted a contractor to perform was BRS Scope work.

17. On March 27, 2017, General Chairman Ingersoll sent a letter to Amtrak in response to Amtrak's March 21 courtesy notification. General Chairman Ingersoll sought to discuss the project and requested that Amtrak not enter any agreement to contract-out

work "that may be exclusive to the Organization".

18. On April 10, 2017, Amtrak Labor Relations Director Jindal responded to a request by General Chairman Ingersoll for an answer to his January 31 inquiry. In her April 10 communication, Ms. Jindal advised that Amtrak "took over the REA Building through eminent domain", but said that BRS employees had not been performing the communications work in the building and asserted that "the change in ownership does not alter the Scope section of the Agreement".

19. Between April 15, 2017 and June 5, 2017 General Chairman Ingersoll and Labor Relations Director Jindal had additional communications. General Chairman Ingersoll continued to assert that once the Railway Express Building was acquired by Amtrak and became Amtrak property, the work of installing, repairing and maintaining communication systems in the building accrued to BRS represented Amtrak communications employees under the Scope and Seniority District Rules of the CBA. Labor Relations Director Jindal refused to acknowledge that the communications systems work in the Railway Express Building is BRS Scope work, refused to commit that the communications systems work in the building would be done by BRS represented communications workers, and stated that work in the building could not be covered by the Scope Rule when Amtrak Signalmen had not performed the work when the building was not owned or controlled by Amtrak. Ms. Jindal did suggest that Amtrak might be open to negotiating over whether communications systems work for the Railway Express Building might be performed by communications workers represented by BRS.

20. As of the date of this Complaint, Amtrak has refused to acknowledge that the work of installing, repairing and maintaining communication systems in the Railway Express Building is

BRS Scope work covered by the CBA. As of the date of this Complaint, Amtrak has not assigned work of installing, repairing and maintaining communication systems in the Railway Express Building to Signalmen represented by BRS. While Amtrak has said that it might choose to assign certain communications work to Amtrak Signalmen in Amtrak occupied areas of the building, Amtrak maintains that it is not obligated to do so.

FIRST CAUSE OF ACTION

21. The BRS incorporates by reference, as if fully set forth herein, each and every allegation of paragraphs 1 through 20.

22. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

23. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice.  In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

24. Under Rules 1 and 7 of the Agreement, and practice under the Agreement, the work of installing, repairing and maintaining communication systems in and for Amtrak owned facilities and equipment on the property of the Carrier is Scope work to be performed by BRS

represented communications workers.

25. Despite the plain language of Rules 1 and 7 of the CBA setting forth the Scope of the work covered by the Agreement, and the territories and facilities where the Scope Rule applies, and despite the established practice, the Carrier has repudiated these aspects of the parties' Agreement by refusing to acknowledge that the communications work in the Railway Express Building is Scope work, and by refusing to assign such work to Amtrak Signalmen.

26. Amtrak has no arguable basis under the terms of the CBA for its refusal to acknowledge that the communications work in the Railway Express Building is Scope work, or for its refusal to assign such work to Amtrak Signalmen.  Specifically, Amtrak's position -- that the Scope and Seniority District Rules are inapplicable because Amtrak Signalmen did not perform the communications systems work when Amtrak did not own or control the Railway Express Building -- has no arguable basis whatsoever.

27. By refusing to acknowledge that the communications systems work in the Railway Express Building is Scope work, and by refusing to assign such work to Amtrak Signalmen, Amtrak has effectively rejected, abrogated, and changed the Agreement not "in the manner prescribed in such agreement[] or in section 156 of" the RLA, and therefore in violation of Section 2, Seventh of the RLA.

REQUEST FOR RELIEF

WHEREFORE, the BRS respectfully requests that the Court

A. DECLARE that by refusing to acknowledge that the work of installing, repairing and maintaining communication systems in and for the Railway Express Building is BRS Scope work to be performed by BRS represented communications workers, and by refusing to assign such work to Amtrak Signalmen, Amtrak has violated Section 2, Seventh of the RLA;

B. GRANT the BRS reasonable attorneys' fees and the costs of this action;

C. GRANT the BRS all other relief that the Court deems just and proper.

          Respectfully submitted,

/s/ Richard S. Edelman
Richard S. Edelman
D.C. Bar No. 416348
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
Redelman@MooneyGreen.com

/s/ William L. Phillips
William L. Phillips
General Counsel
Brotherhood of Railroad Signalmen
33 N. LaSalle St.  #2100
(847) 644-1901
wlp@brs.org